UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARSHALL AVIATION, LLC** : | CIVIL ACTION NO. |
| VS. : | 303CV1013 (SRU) |
| **AIG AVIATION, INC., et al.** : | NOVEMBER 26, 2003 |

**PLAINTIFF'S REPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Plaintiff Marshall Aviation, LLC, ("Marshall") hereby respectfully submits this reply brief in response to Defendants' Reply to the Plaintiff's Memorandum in Opposition.

**I.  DEFENDANTS' CLAIMED INVOCATION OF APPRAISAL CLAUSE IS INEFFECTIVE**

The Defendants' purported invocation of the appraisal clause of the subject policy is merely a belated repackaging of the Defendants' improper attempt to force Marshall into accepting its repair alternative.  When parties invoke an appraisal clause of an insurance contract they usually appoint an appraiser either in the same communication or shortly thereafter. Saterson v. Planet Insurance Company, No. 93-6885 (MBM),1994 WL 689084, at 6 (S.D.N.Y. Dec. 8, 1994).  In the instant matter an

essential question presented to the Court to answer regarding the Defendants' claimed invocation of the appraisal clause is: if the Defendant Insurance Company of the State of Pennsylvania ("TICSP") was sincere about pursuing the appraisal clause in April 2003, why has it *still* not appointed an appraiser?  How can the Defendants claim that in the very letter in which Defendant AIG Aviation, Inc. ("AIG") admits that further testing is necessary prior to the "complete" determination of the loss be deemed *simultaneously* an invocation of the appraisal clause? (See Exhibit A).  If the first letter was indeed intended to invoke the appraisal clause, then why would it be necessary to attempt to invoke it again on June 12, 2003? (See Exhibit B).  The answer is that despite opportunities to pursue the appraisal process, the Defendants never fully intended to do so.  Contrary to the Defendants' novel assertion that the Plaintiff's consent was necessary to "continue" the appraisal process, the Defendants' were free at any time to incur the expense of appointing their own appraiser and seeking enforcement of the clause in court, regardless of the stage of this litigation. (See Def. Memo at 2,3). Therefore, the Defendants' claimed invocations of the appraisal clause in April and June of 2003 were ineffective, untimely and unreasonable.

  If the Defendants are claiming in Section I of their brief that they were ready, willing and able to participate in an appraisal process, such description is factually

inaccurate. The extent that a party pursues its rights pursuant to an appraisal clause once a dispute that is arguably covered has arisen is a factor for determining the waiver of such rights. <u>Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.</u>, 67 F.3d 20, 27 (2d Cir. 1995). The Court in *Leadertex* considered it significant that the party seeking to invoke a contractual remedy had effectively abandoned such right for numerous months prior to filing a motion to compel. *Id.* During the time period from April 23, 2003 through June 12, 2003, the Defendants did not appoint an appraiser in writing nor demand that Marshall do the same. In marked contrast to the Defendants assertion in their brief that "ICSOP invoked the appraisal provision after is completed its *full investigation* of the damage," the letter from Reasoner on April 23, 2003, explicitly states that "[m]ore rigorous testing will be required to re-certify the equipment" and that six other components "must be returned to the manufacturer for re-certification." (See Def. Memo at 2 (emphasis supplied); Exhibit A). After Marshall rejected AIG's proposal to conduct additional testing to recertify the avionics, Marshall requested that American Avionics (AIG's chosen avionics shop) send the BendixKing-Honeywell components back to their manufacturer, all with the full knowledge of AIG. (See Exhibit C). As there was no real movement by the Defendants to indicate a readiness and willingness to participate in an appraisal at that time, Marshall was under the impression that the adjustment process

was incomplete and awaited a response from the Defendants before filing suit on June 9, 2003.  In addition to the Defendants' disregard of the advice of third parties and its own adjusters, the delay of over one and a half months with no communication from AIG prior to its April 23, 2003, letter and the fact that the repair alternative put forward by AIG would essentially put unreliable and therefore unsafe avionics back into the subject aircraft, it was abundantly clear that the Defendants had utterly abdicated their responsibilities under the policy.  Therefore, as the Defendants' abandoned their right to an appraisal, the claimed invocation of the clause was ineffective as the Defendants took <u>no concrete action</u> to evidence its readiness to pursue the process.

## II.     ECONOMIC PREJUDICE TO PLAINTIFF CAUSED BY DEFENDANTS' DELAY JUSTIFIES FINDING WAIVER OF DEFENDANTS' RIGHT TO APPRAISAL

The Defendants should not be allowed to profit at the Plaintiff's expense from their improper conduct by using the appraisal process as a weapon to delay the adjustment of this claim causing severe damage to Marshall's economic interests.  The assertion in the Defendants' brief that Marshall is not prejudiced since it now has a functional plane incorrectly narrows the scope of this Court's analysis of the damage to Marshall's economic interests. (See Def. Memo at 5). The heart of waiver analysis in this context is determining whether a party has caused so much damage to the interests

of a party adverse to the appraisal process so as to justify waiving its right to invoke it. Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991); *Leadertex,* 67 F.3d at 27. In *Kramer*, the Court rejected the notion that prejudice can only be found when there was some res judicata effect: "[b]ut in *Rush*, we clearly implied that the prejudice required for waiver is not limited to substantive prejudice, but may also be prejudice in terms of either expense or delay." *Kramer*, 943 F.2d at 180 (emphasis in original)(internal quotations omitted). The plaintiff in *Leadertex* had its inventory detained for nearly nine months, saw its business decline by more than 90 percent from the previous year, and still had part of its inventory held even after the lower court granted its replevin motion. The Court held that the abandonment of the defendant's right to arbitration coupled with the contemporary harm of detaining the plaintiff's inventory was sufficient to find a waiver. *Leadertex*, 67 F.3d at 27.

In the instant case, time is the equivalent of the inventory of the plaintiff in *Leadertex* as Marshall's time was improperly "detained" and lost by the Defendants' deleterious conduct in the adjustment of this claim. Not only has precious time been lost to accumulate turbine hours, time continues to take its toll on Marshall due to the continuing obligation to pay for the loans it obtained to finance the replacement of the subject avionics. (See Exhibit D). In addition to the time lost, Marshall has lost profit on

5

the sale of the subject aircraft and income from the subsequent planned purchase and lease-back of the King Air jet. *Id.*  To grant the Defendants' Motion would improperly countenance the Defendants' prior tactic of acting outrageously in delaying the processing of this claim and cause additional unnecessary economic harm.  Here, so much damage has been done to Marshall's economic interests that pursuing the appraisal process would be inappropriate and inequitable.

Marshall should not be punished for mitigating its damages by installing functional avionics into its aircraft after the Defendants failed to determine the correct amount of the loss or properly invoke the appraisal process.  The Defendants' own early estimate for the cost of replacing each of the avionics with a component of the same design and manufacturer amounted to approximately $120,000. (See Exhibit E).  In March 2003, the Defendants were given an estimate by VIP, for this same repair alternative for $100,375. (See Exhibit F).  The $7000.00 repair alternative suggested by Reasoner's April 23, 2003, correspondence called for each component to be tested and each inner element of the component that did not meet the prescribed specification would need to be replaced.  Some inner elements from each component exposed to the reverse polarity condition may survive this initial testing, but ultimately may prove unreliable and fail during flight. (See Exhibit G).

Instead of resolving the claim for an amount that was in line with the figures provided by its own adjusters, AIG seemingly sought to force Marshall into accepting an alternative that would not adequately address its safety concerns; Marshall had no choice but to reject this proposal.  After waiting several months with no word from the Defendants, and with justified concern over the potentially damaging effects of "mothballing" the subject aircraft, Marshall decided to complete the most cost effective repair to the subject aircraft.  The avionics installed into the subject aircraft contained some "new" components that combined the features of formerly separate components, along with some refurbished components, (not originally from the subject aircraft), for a total of approximately $92,065.00. (See Damages Analysis).

In their Reply brief, the Defendants attempt to use the Plaintiff's mitigation of its damages by installing the avionics presently in the subject aircraft at a cost substantially lower than the Defendants' and VIP's earlier estimates to argue that the Plaintiff was not prejudiced by the Defendants' delay in attempting to invoke the appraisal clause. (See Def. Memo at 5).  The Defendants are the principal actors causing a harm that Marshall has mitigated to the best of its ability.  It would be fundamentally unjust to allow the Defendants not only to benefit from the added time that they held onto the funds that

should have gone to Marshall to repair the subject aircraft early in 2003, but also from Marshall's mitigation efforts themselves.

The Defendants have known what it would take to adequately repair the subject aircraft since March, 2003, yet have not taken legally sufficient steps to determine the full amount of the loss, pay the proper amount due, or properly preserve or invoke its rights to an appraisal of the loss. Accordingly, due to the significant prejudice the Defendants have caused to Marshall's economic interests by their delay in attempting to invoke the appraisal process, the Defendants should not be allowed to reap the benefit of their improper conduct.

## III.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendants Motion to Compel Arbitration and Stay Proceedings.

        PLAINTIFF,
**MARSHALL AVIATION, LLC**

---

JONATHAN E. SNYDER
Gordon, Muir and Foley, LLP
Hartford Square North
Ten Columbus Boulevard
Hartford, CT 06106
(860) 525-5361
Federal Bar No. ct22572

## **CERTIFICATION**

     I hereby certify that a copy of the foregoing Reply was mailed, first class, postage prepaid mail, on November 26, 2003, to:

Steven R. Arnold, Esq.
Stanger & Arnold, LLP
29 South Main Street, Suite 325
West Hartford, CT 06107

---

JONATHAN E. SNYDER

349685

9