UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MARSHALL AVIATION, LLC** | : | **CIVIL ACTION NO.** |
| | : | |
| **VS.** | : | **303CV1013 (SRU)** |
| | : | |
| **AIG AVIATION, INC.,** | : | |
| **THE INSURANCE COMPANY OF THE** | : | |
| **STATE OF PENNSYLVANIA,** | : | |
| **MJ AVIATION, LLC, LJ AVIATION, LLC,** | : | |
| **and LOUIS PUGLIESE, JR.** | : | **NOVEMBER 10, 2004** |

## THIRD AMENDED COMPLAINT

Plaintiff hereby brings this Complaint against the Defendants and Third-Party

Defendants and alleges that:

**FIRST COUNT:**

1.      Plaintiff, Marshall Aviation, LLC ("Marshall") is a limited liability company

organized under the laws of the State of Alabama, having its principal place of business

in the State of Connecticut, and defendant The Insurance Company of the State of

Pennsylvania ("TICSP") is a corporation incorporated under the laws of the State of

Pennsylvania having its principal place of business in a state other than the State of

Connecticut.  Defendant AIG Aviation, Inc. ("AIG"), is a corporation incorporated under

the laws of the State of Georgia having its principal place of business in a state other

than the State of Connecticut.  The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. §1332.

2.      Marshall owns and operates an aircraft known as a Beech Baron 58 (identification number N432DL).

3.      On or about September 4, 2002, Marshall purchased, and TICSP issued, an aircraft insurance policy which provided coverage relating to Marshall's ownership and operation of the above-referenced aircraft.  The policy identified AIG as the "aviation managers."

4.      The policy provided in part that TICSP "will pay for physical damage to [Marshall's] aircraft."  The term "physical damage" is defined in the policy as "direct and accidental physical loss of or damage to property."  The policy further provided that the insurer will pay "the costs to repair or replace damage with materials of like kind and quality."

5.      On or about November 14, 2002, during the course of routine maintenance being performed on the aircraft, the electronic and avionic components of the aircraft were subjected to a reverse polarity condition, caused by the flow of electricity in an improper direction, resulting in severe and significant damage to substantially all the critical flight equipment of the aircraft necessary for safe operation.

6.      Marshall notified TICSP, through its "aviation manager" and/or agent, AIG, of the damage to the aircraft and has forwarded to it all relevant invoices, reports and correspondence that have been issued or obtained regarding the damage, the costs of repair/replacement and miscellaneous other items of expense.

7.      Prior to the commencement of this lawsuit, and only after repeated demands made by Marshall for payment, TICSP, through its "aviation manager" and/or agent, AIG, has made insubstantial payments of various elements of the claim, but has failed and/or refused to pay the costs of repairing or replacing the damaged electronic and avionic systems and components "with materials of like kind and quality" as that phrase is used in the policy of insurance.

8.      TICSP's failure and/or refusal to fulfill its obligations under the insurance policy constitute a material breach of the insurance contract between the parties.

9.      As a result of TICSP's breach as aforesaid, Marshall has suffered, and continues to suffer, substantial monetary harm and its ability to provide transportation services to potential business customers has been unreasonably and unnecessarily delayed.

**SECOND COUNT:**

10-17.    Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 10 through 17 of the Second Count as if fully set forth herein.

18.    TICSP has a duty arising from its contractual relationship with Marshall to adjust Marshall's claim on the insurance policy in a timely and competent manner.

19.    TICSP's failure to provide adequate training and oversight to its adjusters, failure to obtain a written estimate or quote prior to issuing a "partial proof of loss," and failure to ever make a viable assessment of the loss constitute breaches of its duty to Marshall.

20.    As a result of TICSP's breach of its duty to Marshall by failing to adjust this claim in a timely and competent manner, Marshall has incurred, and continues to incur, substantial monetary harm, and its ability to provide transportation services to business customers has been unreasonably and unnecessarily delayed.

**THIRD COUNT**

21-28.    Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 21 through 28 of the Third Count as if fully set forth herein.

29.    During the period from late January 2003 to the present time, TICSP and AIG have ignored the advice, recommendations and opinions of investigations and

4

adjusters retained to evaluate the damage to the aircraft.  In addition, TICSP, and AIG,

have been made aware that the manufacturer of the avionics equipment has indicated

that the units can neither be recertified, repaired nor warranted as a result of their

exposure to the reverse polarity.  TICSP and AIG, have also been made aware by

independent Connecticut-based aviation repair facilities that the aircraft's avionic and

electronic systems require replacement in order for the aircraft to be operated safely.

30.     Despite having this information from its own investigators and consultants

either directly or through AIG, from the avionics manufacturer, from independent repair

facilities, and from its own insured, TICSP has failed and/or refused to pay the

reasonable and necessary costs required to repair the aircraft.  Instead, TICSP, through

its "aviation manager" and/or agent, AIG, has engaged in a protracted process of

suggesting that further testing be conducted in an effort to avoid paying the costs of

repairing and replacing the various components that were damaged.

31.     During the course of the claim-handling process, TICSP, through its

agents, servants, employees and/or representatives, made numerous misrepresentative

statements to Marshall regarding the payment of its claim.

32.     The acts and conduct of TICSP as described in this complaint constitute a breach of the covenants of good faith and fair dealing that are implicit in the contractual relationship between TICSP, as the insurer, and Marshall, as the insured.

33.     As a result of TICSP's bad faith handling of the claim and its breach of the implied covenants of good faith and fair dealing, Marshall has incurred, and continues to incur, substantial monetary harm, and its ability to provide transportation services to business customers has been unreasonably and unnecessarily delayed.

**FOURTH COUNT:**

34-41.     Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 34 through 41 of the Fourth Count as if fully set forth herein.

42-43.     Paragraphs 18 and 19 of the Second Count are hereby incorporated and made paragraphs 42 and 43 of the Fourth Count as if fully set forth herein.

44-46.     Paragraphs 29 through 31 of the Third Count are hereby incorporated and made paragraphs 44 through 46 as if fully set forth herein.

47.     TICSP was aware in January of 2003 that Marshall had a buyer for the subject aircraft and was seeking to purchase a new aircraft to further the development of its business interests in transportation services.

48.     The conduct of TICSP was in reckless disregard of the severe consequences to the just rights and interests of Marshall through TICSP's failure to adjust this claim in a timely and competent manner.

49.     As a result of TICSP's reckless disregard of the severe consequences to the just rights and interests of Marshall through TICSP's failure to adjust this claim in a timely and competent manner, Marshall has incurred, and continues to incur, substantial monetary harm, and its ability to provide transportation services to business customers has been unreasonably and unnecessarily delayed.

**<u>FIFTH COUNT</u>**

50-57.     Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 50 through 57 of the Fifth Count as if fully set forth herein.

58-60.     Paragraphs 29 through 31 of the Third Count are hereby incorporated and made paragraphs 58 through 60 of the Fifth Count as if fully set forth herein.

61.     TICSP's conduct, through its "aviation manager" and/or agent, AIG, in making misrepresentative statements to Marshall is violative of C.G.S. §38a-816(1) and offends public policy.

62.     The acts and conduct of TICSP, through its "aviation manager" and/or agent, AIG, as aforesaid are violative of the Connecticut Unfair Trade Practices Act

(C.G.S. §42-110a et seq.) in that said acts and conduct were immoral, oppressive, offend traditional common law concepts of fairness, and have caused substantial and ascertainable monetary loss to Marshall.

**SIXTH COUNT:**

63-70.    Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 63 through 70 of the Sixth Count as if fully set forth herein.

71.    AIG has assumed a duty to Marshall arising from its contractual relationship with TICSP to adjust Marshall's claim on the insurance policy in a timely and competent manner.

72.    AIG's failure to provide adequate training and oversight to its adjusters, failure to obtain a written estimate or quote prior to issuing a "partial proof of loss," and failure to ever make a viable assessment of the loss constitute breaches of its duty to Marshall.

73.    As a result of AIG's breach of its duty to Marshall by failing to adjust this claim in a timely and competent manner, Marshall has incurred, and continues to incur, substantial monetary harm, and its ability to provide transportation services to business customers has been unreasonably and unnecessarily delayed.

**SEVENTH COUNT:**

74-81.    Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 74 through 81 of the Seventh Count as if fully set forth herein.

82-83.    Paragraphs 71 and 72 of the Sixth Count are hereby incorporated and made paragraphs 82 and 83 of the Seventh Count as if fully set forth herein.

84-86.    Paragraphs 29 through 31 of the Third Count are hereby incorporated and made paragraphs 84 through 86 as if fully set forth herein.

87.    AIG was aware in January of 2003 that Marshall had a buyer for the subject aircraft and was seeking to purchase a new aircraft to further the development of its business interests in transportation services.

88.    The conduct of AIG was in reckless disregard of the severe consequences to the just rights and interests of Marshall through AIG's failure to adjust this claim in a timely and competent manner.

89.    As a result of AIG's reckless disregard of the severe consequences to the just rights and interests of Marshall through AIG's failure to adjust this claim in a timely and competent manner, Marshall has incurred, and continues to incur, substantial monetary harm, and its ability to provide transportation services to business customers has been unreasonably and unnecessarily delayed.

**EIGHTH COUNT:**

90-97.     Paragraphs 1 through 8 of the First Count are hereby incorporated and made paragraphs 90 through 97 of the Eighth Count as if fully set forth herein.

98-100.   Paragraphs 29 through 31 of the Third Count are hereby incorporated and made paragraphs 98 through 100 of the Eighth Count as if fully set forth herein.

101.       AIG's conduct in making misrepresentative statements to Marshall is violative of C.G.S. §38a-816(1) and offends public policy.

102.       The acts and conduct of AIG as aforesaid are violative of the Connecticut Unfair Trade Practices Act (C.G.S. §42-110a et seq.) in that said acts and conduct were immoral, oppressive, offend traditional common law concepts of fairness, and have caused substantial and ascertainable monetary loss to Marshall.

**NINTH COUNT:**

103.       On or about November 14, 2002, Marshall's aircraft was in the custody of Third-Party Defendant MJ Aviation, LLC, for routine maintenance at its location in Danbury, Connecticut.

104.       During the course of this routine maintenance, in part conducted by Lou Pugliese, an employee or agent of MJ Aviation, LLC, the terminals of the ship's battery were connected in reverse order so that, when activated, electricity would flow through

the aircraft's electrical system in the opposite direction than it was designed to accommodate.  On the above date, after filling out paperwork certifying that the aircraft was safe for flight, an MJ Aviation, LLC employee powered up the airplane's engines.

105.    As a result of MJ Aviation, LLC's negligent failure to ensure that the battery cables were connected in the proper fashion, when the engines were started by an MJ Aviation, LLC employee, electricity was caused to flow in a reverse manner, thereby severely damaging all electrical components of the aircraft.  For safety reasons, all avionic components and all potentially affected electrical wiring of the aircraft were replaced at the expense of Marshall to its injury.

106.    As a further result of the injury inflicted by MJ Aviation, LLC, Marshall has incurred substantial monetary harm, and its ability to provide transportation services to business customers has been unnecessarily delayed.

**TENTH COUNT:**

107-110.   Paragraphs 103 through 106 of the Ninth Count are hereby incorporated and made paragraphs 107 through 110 of the Tenth Count as if fully set forth herein.

111.    Since LJ Aviation, LLC purchased substantially all of MJ Aviation, LLC's assets, it is MJ Aviation, LLC's successor in interest and therefore assumed the

liabilities occasioned by MJ Aviation, LLC's negligent conduct.  Accordingly, LJ Aviation, LLC is legally responsible for the injuries to Marshall's interests.

**ELEVENTH COUNT:**

112.     On or about November 14, 2002, Marshall's aircraft was in the custody of Third-Party Defendant MJ Aviation, LLC, for routine maintenance at its location in Danbury, Connecticut.

113.     During the course of this routine maintenance, in part conducted by Lou Pugliese, the terminals of the aircraft's battery were connected in reverse order so that when activated, electricity would flow through the aircraft's electrical system in the opposite direction than it was designed to accommodate.  On the above date, after filling out paperwork certifying that the aircraft was safe for flight, Lou Pugliese powered up the aircraft's engines.

114.     As a result of Louis Pugliese, Jr.'s negligent failure to ensure that the battery cables were connected in the proper fashion, when the engines were started by Louis Pugliese, Jr., electricity was caused to flow in a reverse manner, thereby severely damaging all electrical components of the aircraft.  For safety reasons, all avionic components and all potentially affected electrical wiring of the aircraft were replaced at the expense of Marshall to its injury.

12

115.     As a further result of the injury inflicted by Lou Pugliese, Jr., Marshall has incurred substantial monetary harm, and its ability to provide transportation services to business customers has been unnecessarily delayed.

**WHEREFORE,** Marshall Aviation, LLC, claims:

1.     Monetary damages;

2.     Punitive Damages;

3.     Attorneys' fees;

4.     Punitive damages and attorneys' fees pursuant to C.G.S. §42-110a <u>et seq</u>.

5.     Interest;

6.     Costs; and

7.     Such other further legal or equitable relief as the court may deem appropriate.

The plaintiff requests trial by jury.

13

PLAINTIFF,
MARSHALL AVIATION, LLC

_____

ROBERT J. O'BRIEN
JONATHAN E. SNYDER
Gordon, Muir and Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106
(860) 525-5361
Federal Bar No. ct05489
Federal Bar No. ct22572
Email: ro'brien@gmflaw.com
Email: jsnyder@gmflaw.com

14

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed, first class postage prepaid mail, on November 10, 2004, to:


Steven E. Arnold, Esquire
Stanger & Arnold, LLP
29 South Main Street
West Hartford, CT  06107

Eric  P. Smith, Esq.
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Richard J. Kenny, Esq.
Kenny, O'Keefe & Usseglio, PC
21 Oak Street, #208
Hartford, CT 06106-8002


_____
JONATHAN E. SNYDER

::ODMA\PCDOCS\DOCS\371027\1

15